**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Carol Manheim d/b/a Plantation Plaza Therapy Center, individually and on behalf of all other persons similarly situated, | |
| Plaintiff, | Case No. 2:14-cv-02856-DCN |
| v. | |
| SME Inc., USA d/b/a Superior Medical Equipment, | |
| Defendant. | |

# Plaintiff's Unopposed Motion and Supporting Brief for Preliminary Approval of Class Settlement and Conditional Class Certification

Carol Manheim d/b/a Plantation Plaza Therapy Center, for herself and on behalf of a class of similarly situated persons, moves this Court for:

(1)     preliminary approval of the proposed settlement of this action as set forth in the Settlement Agreement entered by the parties on July 1, 2015, a copy of which is attached as Exhibit A; and

(2)     certification of this action as a class action under Federal Rule of Civil Procedure 23(b)(2) & (3) for purposes of settlement.

SME Inc., USA d/b/a Superior Medical Equipment does not oppose this motion. A proposed order granting this motion is attached as Exhibit B.

A class action can be settled only with approval from the Court. Approving a

settlement in a class action involves a two-step process.[1] The Court first makes a preliminary determination regarding the fairness of the proposed settlement.[2] This determination is typically "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."[3] "The purpose of this cursory examination is to detect defects in the settlement that would risk making 'notice to the class, with its attendant expenses, and a hearing … futile gestures.'"[4] If the Court finds that the settlement is fair, it then directs that notice be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.[5]

"[T]he Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation."[6] "[P]reliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'"[7]

Granting preliminary approval is not tantamount to a finding that the settlement is

---

[1] *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

[2] *McNamara*, 214 F.R.D. at 426.

[3] MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

[4] *In re Elec. Data Sys. Corp. "ERISA" Litig.*, No. 6:03-MD-1512, 6:03-CV-126, 2005 WL 1875545, 4 (E.D. Tex. June 30, 2005) (ellipses in original).

[5] *McNamara*, 214 F.R.D. at 426.

[6] *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001).

[7] *In re M.L. Stern Overtime Litig.*, No. 07–CV–0118–BTM (JMA), 2009 WL 995864, 3 (S.D. Cal. Apr. 13, 2009).

fair and reasonable; it is a determination that there is what might be called "probable cause" to submit the proposal to class members and hold a full-scale hearing regarding its fairness.[8] At the formal fairness hearing, the Court can accept the settlement if it is shown to be fair, adequate, and reasonable.[9]

At this stage, the Court is being asked to make a preliminary finding that the proposed settlement appears to be fair, set a schedule for notice to the class members and the submission of claims, objections, and opt-outs, and schedule a formal fairness hearing. The proposed order attached as Exhibit B contains a proposed schedule that seeks a fair-but-prompt approval process aimed at providing class members monetary relief in a timely manner.

## Factual & Procedural Background

With limited exceptions, the Telephone Consumer Protection Act or TCPA makes it illegal for one to send unsolicited advertisements, commonly called "junk faxes," to fax machines.[10] FCC regulations also prohibit advertisers from sending junk faxes.[11] And the TCPA allows businesses and individuals to sue for violations of the law.[12]

Sending junk faxes causes damage to those to whom the junk faxes are sent. Those

---

[8] *In re Traffic Executive Association-Eastern R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).

[9] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)

[10] 47 U.S.C. § 227(b)(1)(c).

[11] 47 C.F.R. § 64.1200(a)(3).

[12] 47 U.S.C. §227(b)(3).

to whom junk faxes are sent have their telephone lines tied up and their paper and toner taken and used to print the senders' advertisements (junk faxes are the equivalent of junk mail sent postage due). Sending fax advertisements invades the privacy of those to whom the junk faxes are sent. These unwanted faxes prevent fax machines from receiving authorized faxes, prevent fax machines from being used for authorized outgoing faxes, cause undue wear and tear on the fax machines to which the junk faxes are sent, and require additional labor by those to whom the junk faxes are sent to attempt to discern the source and purpose of the unsolicited message. Sending unwanted fax advertisements also consumes a portion of the limited capacity of the telecommunications infrastructure serving those to whom they are sent.

After SME sent several unsolicited advertisements to Manheim's fax machine, Manheim filed this case on July 16, 2014, for herself and on behalf of a putative class of individuals and businesses to whom SME sent its unsolicited advertisements. Manheim later filed an Amended Complaint (Doc. 32) on February 6, 2015. The Amended Complaint is the operative one.

As alleged in the Amended Complaint, SME or agents acting on its behalf sent the same fax transmissions of material advertising the commercial availability of SME's property, goods, or services to Manheim and thousands of other persons throughout the United States.[13] SME did not have the express invitation or permission of Manheim to send its advertisements to her fax machine, nor did SME have the express invitation or

---

[13] Doc. 32 at ¶¶ 29–42.

permission of many others to send advertisements to their fax machines.[14]

Before filing this lawsuit, Manheim's counsel wrote to SME regarding SME's violations of the TCPA and, amongst other things, instructed SME not to send any more advertising faxes to Manheim.[15] Despite receiving that letter, SME continued to send unsolicited advertisements to the fax machines belonging to Manheim and others in violation of the law.[16]

Manheim served SME with the initial Complaint on August 13, 2014, along with her Motion for Class Certification.[17] Soon thereafter, the parties' counsel initiated conversations about possible resolution of the litigation.

The parties entered into a Confidentiality Agreement on October 7, 2014, and began an exchange of documents and information for the purpose of negotiating a settlement.

On January 21, 2015, SME filed a Motion to Dismiss (Doc. 27) with a supporting Memorandum (Doc. 27-1), and a Response to Plaintiff's Motion for Class Certification (Doc. 28). On February 6, 2015, Manheim filed her Response to SME's Motion to Dismiss (Doc. 31) and an Amended Complaint (Doc. 32). At the same time, the parties continued to negotiate a settlement of the litigation.

Months of extensive negotiations culminated in the parties executing a Memorandum of Understanding on April 3, 2015, that outlined an agreement to settle and

---

[14] Doc. 32 at ¶¶ 39–40.

[15] Doc. 32 at ¶ 41.

[16] Doc. 32 at ¶ 42.

[17] Doc. 8-1.

resolve all issues in this case on a class-wide basis. Part of the negotiations involved SME providing Manheim's counsel with financial information going back to 2011. After the Memorandum of Understanding was executed, SME produced additional documents and data requested by Manheim to confirm, among other things, certain aspects of the settlement and to value the injunctive relief that is part of the settlement. Working from the Memorandum of Understanding, the parties prepared the Settlement Agreement that is attached as Exhibit A, which was executed on July 1, 2015.

### The Proposed Settlement

The parties engaged in contentious settlement negotiations for nine months. During those discussions, SME provided Manheim's counsel with data regarding SME's fax-advertising and the company's finances. After extensive, hard-fought negotiations, the parties reached the class-wide settlement described below and memorialized in the attached Exhibit A (the "Settlement Agreement").

For purposes of settlement, the parties agreed to request that this Court certify a class of all persons, natural or otherwise, throughout the United States to whom SME sent or caused to be sent, at any time from July 16, 2010, to the present, one or more facsimile or fax transmissions with content substantially similar to those fax transmissions contained in Exhibits A, B, C, D, E, F, G, H, I, J, K, L, or M of the Settlement Agreement.[18]

_____

[18] SME or its agent maintained records of all fax numbers to which SME sent its advertising faxes, which number approximately 20,000. Those records include the names of the individuals

(continued...)

The total value of this settlement is $975,000. The settlement package includes cash consideration of $650,000, plus injunctive relief that the parties value at $325,000. SME will pay up to $650,000 to establish a common fund from which the following will be paid:

1. all class members' claims;

2. a case-contribution payment to the Class Representative;

3. Class Counsel's attorneys' fees and expenses; and

4. The class-notice and claims-administration costs associated with seeking approval of and administering this settlement (an independent, experienced, and reputable claims-administration firm will be hired to handle the class-notice and claims-administration work).

Each participating class member will receive $500. If the number of valid claims made on the fund after it has been fully funded by SME are such that all the claims cannot be paid in full due to the deduction from the fund of the case-contribution payment to the Class Representative, Class Counsel's attorneys' fees and expenses, and the class-notice and claims-administration costs, then the class members' claims will be paid on a pro rata basis.

The settlement also calls for the Court to enter an order permanently enjoining SME from using any fax machine, computer, or other device to send any unsolicited advertisements to class members' fax machines. This injunctive relief was specifically

---

[18](...continued)
or businesses associated with those fax numbers. The records do not, however, include any mailing addresses. SME has provided those records to Manheim's counsel.

sought in this case[19] and is of value to the class because, even after Manheim's counsel wrote to SME regarding its violations of the TCPA and instructing SME to stop sending its junk faxes to Manheim, SME continued to send unsolicited advertisements to fax machines belonging to Manheim and the proposed class in violation of the law.

Upon final approval of the settlement, and in consideration for the monetary and non-monetary benefits provided for in the settlement, all class members, regardless of whether they claimed or obtained benefits under the settlement, will release and covenant not to sue SME and its shareholders, officers, directors, attorneys, agents, employees, successors, and assigns from all claims arising from or related to SME sending advertisements to fax machines or causing advertisements to be sent to fax machines at any time since July 16, 2010, with content substantially similar to those fax transmissions contained in Exhibits A, B, C, D, E, F, G, H, I, J, K, L, or M attached to the Settlement Agreement. The full extent of the release is set forth in the Settlement Agreement attached as Exhibit A.

Class members will be notified about the settlement by fax.[20] The proposed notice

---

[19] *See* Doc. 1 at ¶¶ 59–61; Doc. 32 at ¶¶ 58–60.

[20] Notice programs similar to the one proposed here have been approved by courts. *Gans v. Leiserv, Inc.*, No. 02 CC-002115, 2004 WL 5905083 (Mo. Cir. Ct. Dec. 15, 2004); *A Fast Sign Co. v. Am. Home Servs., Inc.*, No. 2003-CV-77276 (Ga. Fulton Co. Super. Fe. 20, 2008); *Girards v. Intercontinental Hotels Corp.*, 2007 TCPA Rep. 1724 (Tex. Dist. Aug. 27, 2007); *Brodeur v. Lou Fusz Automotive Network, Inc.*, 2006 TCPA Rep. 1541 (Mo. Cir. June 30, 2007); *Construction Consulting Group, LTC v. Gersten Fin. & Ins., Inc.*, 2003 TCPA Rep. 1342 (Ill. Cir. Dec. 16, 2003).

Sending notice by fax does not violate the TCPA. The TCPA prohibits "any person" from sending an "unsolicited advertisement" to a fax machine without express invitation or

(continued...)

fax is attached to the Settlement Agreement as Exhibit N-1. The proposed notice fax is

modeled on a form prepared by the Federal Judicial Center. Class members will be

directed to an Internet website where they will find detailed information about the case

and the proposed settlement, be able to obtain a claim form, and find information about

how to opt-out of the class or how to file objections to the settlement.

**The Court Should Preliminarily Approve the Settlement**

**I.      There is a strong policy of favoring settlement, particularly in class-action cases.**

There is a strong public policy of encouraging settlements,[21] and "[v]oluntary

conciliation and settlement are the preferred means of dispute resolution in complex class

action litigation."[22] The Court should be mindful of this "strong judicial policy favoring

---

[20](...continued)
permission. 47 U.S.C. § 227(b)(1)(C). The notice fax is not an "unsolicited advertisement" as that term is defined in the TCPA because it is not promoting the commercial availability of property, goods, or services. *See* 47 U.S.C. § 227(a)(5). Also, the notice fax would be sent by order of the District Court, which is not a "person" under the law. *See* 1 U.S.C. § 1 (defining "person" when used in Acts of Congress); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 766 (2000) (recognizing the "longstanding interpretive presumption that 'person' does not include the sovereign").

[21] *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 653–54 (4th Cir. 1988) (discussing the exclusionary rule of FED. R. EVID. 408); *U.S. Fid. & Guar. Co. v. Patriot's Point Dev. Auth.*, 772 F. Supp. 1565, 1572 (D.S.C. 1991) (stating "the federal policy of encouraging settlement is important").

[22] *Smith v. CRST Van Expedited, Inc.*, No. 10–CV–1116–IEG (WMC), 2013 WL 163293, 2 (S.D. Cal. Jan. 14, 2013); *Officers for Justice v. Civil Serv. Com'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

settlement"[23] when determining whether to grant preliminary or final approval to a proposed class-action settlement, and it should remember that "compromise is the essence of settlement."[24]

"The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'"[25] In weighing whether the proposed settlement is fair, adequate, and reasonable, the Court is entitled to rely upon the judgment of the experienced counsel for the parties.[26] Indeed, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."[27]

## II.    The proposed settlement meets the standards for preliminary approval.

The settlement is the product of informed, arms-length negotiations between Manheim, SME, and their respective counsel. Manheim's and her counsel's evaluation of the settlement is based on calculations regarding the risks of continuing litigation.

First, one must consider the complexity, expense, and potential duration of litigation. Class-action cases are highly complex, expensive, and uncertain endeavors. Continued

---

[23] *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

[24] *Id.*

[25] *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

[26] *Blank v. Talley Indus., Inc.*, 64 F.R.D. 125, 132 (S.D.N.Y. 1974). *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *Cotton*, 559 F.2d at 1330.

[27] *Cotton*, 559 F.2d at 1330.

litigation would be costly and would delay any payments to the class by several years, or more. While the TCPA is a strict-liability statute and Manheim and her counsel believe that SME's liability is clear, defense counsel in other cases have been able to tie up meritorious claims for years, sometimes for more than a decade. Moreover, class certification presents numerous risks and costs. If the litigation is not settled now, both sides will spend considerable time and expense in discovery and dispositive motions. Then, if the dispositive motions are not granted, the parties will participate in a trial. If Manheim were not successful at trial, the class would get no relief. And, even if Manheim were successful at trial, it is fair to assume that SME would file an appeal.

Second, a class has not yet been certified. While Manheim believes that this case easily meets the standards for class certification, SME would staunchly oppose class certification. If no class is certified, then it would be virtually impossible for the class members to get the relief provided by the settlement. The attorney's fees and expenses associated with any individual lawsuit against SME are simply too great compared to the possible individual recovery, and it is thus very unlikely that any class member would sue on their own.

Third, continued litigation could cause significant financial harm to SME. Manheim and her counsel have ascertained that SME does not have insurance that would cover (or even provide a defense for) Manheim's and the proposed class's claims. Manheim's counsel has also reviewed financial information from SME going back to 2011. SME is a successful closely held business, but it does not have the financial resources to risk a

class-wide judgement in this case.

All of this means that failure to settle jeopardizes payments to the class and delays any payments by several years.

The settlement provides tangible benefits to the class that are fair, adequate, and reasonable in light of the risks associated with continuing litigation.

## III. The class should be certified for settlement purposes.

SME does not oppose class certification for settlement purposes and, indeed, joins in the request that the class be certified in order to effectuate the settlement. But before preliminary approval of a class-action settlement can be granted, the Court must determine that the proposed class is appropriate for certification.[28]

Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of those of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b).[29]

In this case, Manheim seeks class certification under Rule 23(b)(2) and 23(b)(3).

---

[28] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

[29] *Amchem*, 521 U.S. at 614.

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'"[30] For a class action to be permitted under Rule 23(b)(3), the questions of law or fact common to all class members must predominate over issues affecting only individual members, and the maintenance of a class action must be superior to other available methods for the fair and efficient adjudication of the controversy.[31]

### A. The proposed class is so numerous that joinder of all members is impracticable.

In order for a class action to be certified, the membership in the proposed class must be "so numerous that joinder of all members is impracticable.[32] There is no specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members.[33] A class action may proceed upon an estimate of the size of the proposed class,[34] and courts can also make common-sense assumptions about the numerosity of the class and whether joinder of all is impracticable.[35] Class actions

---

[30] *Id.*

[31] *Id.* at 615.

[32] FED. R. CIV. P. 23(a)(1).

[33] *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

[34] *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 666 (N.D. Ga. 1975).

[35] *See Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981) (stating numerosity requirement generally assumed to be met in class action suits involving nationally traded securities).

have been approved by courts involving as few as 25 persons in the class.[36] And "[g]enerally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met."[37]

In this case, SME sent unsolicited advertisements to approximately 20,000 individuals and businesses. Joinder of that many parties is impractical. Thus, the proposed class satisfies the numerosity requirement.

### B. There are questions of law or fact common to the proposed class that predominate over any questions affecting only individual members.

"Commonality is not required on every question raised in a class action."[38] The commonality requirement is satisfied if one or more claims depend on a common factual or legal contention that it is capable of class-wide resolution.[39] The commonality requirement is usually satisfied when a common nucleus of operative facts unites the class.[40] Courts have consistently found a common nucleus of operative facts to exist when a defendant is alleged to have directed standardized conduct toward the putative class members.[41]

Here, SME sent the same faxes (or substantially the same faxes) as part of the same

---

[36] *Sta-Power Industries, Inc.*, 134 Ga. App. at 955.

[37] *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006).

[38] *DeBoear v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (3rd Cir. 1995).

[39] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

[40] *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

[41] *Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 82 (N.D. Ill. 1997).

course of conduct to the approximately 20,000 members of the proposed class, and

sending the faxes to each class member is governed by the same law. As alleged in

Manheim's Amended Complaint, the proposed class shares common questions of law and

fact that predominate over issues affecting only individual members of the proposed class

(if any individualized issues even exist[42]). Those common legal and factual issues include:

(1) whether the fax transmissions at issue are "advertisements"; (b) whether SME violated

the TCPA; and (c) the nature and extent of damages and other remedies to which the

conduct of SME entitles class members.

"Class certification is normal in litigation under the TCPA because the main

questions … are common to all recipients."[43] "The vast majority of courts have approved

the class certification of TCPA claims."[44]

Common questions of law and fact do not just predominate over any individual

issues in this case, common questions are the only issues.

**C.  Maneheim's claims are typical of those of the proposed class.**

Although Rule 23(a) separately sets forth commonality and typicality requirements,

---

[42] No individual issues concerning damages are presented here. Rather, damages are a common issue because the TCPA imposes statutory damages for each violation. 47 U.S.C. § 227(b)(3). Whether SME's conduct was wilful and knowing and, as a result, warrants trebling these damages is also common to the entire class.

[43] *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

[44] *Penzer v. MSI Mktng., Inc.*, No. 01-30868 CA 32, 2003 WL 25548019, *2 (Fla. Cir. Ct. Apr. 2, 2003).

those requirements tend to merge.[45] Thus, just as Manheim's claims meet the commonality requirement, they also meet the typicality requirement.

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."[46] Manheim's claims are typical of the claims of the proposed class because they arise from the same course of conduct—a massive fax advertising campaign—directed toward the entire class, and because the claims of the entire class arise under the TCPA. Any differences that may exist between Manheim's factual situation and the factual situation of any proposed class member are minor given SME's common course of conduct directed toward members of the proposed class.

A strong similarity of legal theories will satisfy the typicality requirement even if there are substantial factual differences.[47] As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) is satisfied.[48]

Here, the exact same legal theories are being used to seek redress for SME's fax-advertising campaign. No substantial factual differences exist in the fact pattern. The typicality requirement is met when the same unlawful course of conduct is directed at

---

[45] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

[46] *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

[47] *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

[48] *Kas v. Financial Gen. Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C. 1984).

both the named plaintiff and the members of the proposed class.[49] Because the same

unlawful conduct was directed at Manheim and the proposed class members in this case,

the typicality requirement is satisfied.

### D. Maneheim will fairly and adequately protected the interests of the proposed class.

Rule 23 requires that the named plaintiff provide fair and adequate protection for the

interests of the class. That protection involves two factors:

(1)    that the plaintiff's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation; and

(2)    that the plaintiff must not have interests antagonistic to those of the class.[50]

Manheim has retained experienced counsel who possess experience in class-action

litigation and the TCPA.[51] Manheim's counsel are well-respected members of the legal

community, have regularly engaged in complex litigation, and have significant experience

---

[49] *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

[50] *E.g.*, *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 345-46 (S.D. Ga. 1996).

[51] *See* Doc. 5-3 (Affidavit of John S. Nichols), Doc. 5-4 (Affidavit of J. Clarke Newton), and Doc. 5-5 (Affidavit of Marc B. Hershovitz).

Of particular relevance, one of Manheim's counsel, Marc Hershovitz, served as lead class counsel in a TCPA case that resulted in a $459 million judgment being entered for the class, which is the largest trial judgment in Georgia history. Doc. 5-5 at ¶ 13. The judgment was affirmed as related to all substantive arguments that the defendant raised to try to overturn the trial court's judgment. *Am. Home Servs., Inc. v. A Fast Sign Co.*, 747 S.E.2d 205 (Ga. Ct. App. 2013), *cert. denied* No. S13C1688 (Ga. May. 19, 2014); *see also A Fast Sign Co. v. Am. Home Servs., Inc.*, 734 S.E.2d 31 (Ga. 2012); *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768 (11th Cir. 2011); *Am. Home Servs., Inc. v. A Fast Sign Co.*, 651 S.E.2d 119 (Ga. Ct. App. 2007).

in consumer class actions involving similar issues.[52]

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff coincide with the general interests of the proposed class. Both Manheim and the class members seek the same thing: obtaining relief from SME for its marketing its products through unsolicited fax advertising. Because the claims of Manheim and the class members are identical, there is no potential for conflicting interests in this case. There is no antagonism between Manheim's interests and those in the proposed class; they are all in the same boat and share a like interest in vindicating SME's violations of the TCPA.

### E. SME acted on grounds that apply generally to the class so that final injunctive relief is appropriate respecting the class as a whole.

Once a court finds that the requirements of Rule 23(a) are satisfied, it must then find that one of the requirements of Rule 23(b) are met.

Rule 23(b)(2) provides that class actions are appropriate when a defendant has acted on grounds that apply generally to the class so that final injunctive relief is appropriate. The TCPA authorizes persons or entities that are victims of violations of the TCPA or the regulations promulgated under the TCPA to bring actions to enjoin such violations.[53] In her Amended Complaint, Manheim sought that injunctive relief for herself and the class

---

[52] *See* Doc. 5-3 (Affidavit of John S. Nichols), Doc. 5-4 (Affidavit of J. Clarke Newton), and Doc. 5-5 (Affidavit of Marc B. Hershovitz).

[53] 47 U.S.C. § 227(b)(3).

she seeks to represent.[54]

Before filing this lawsuit, Manheim's counsel wrote to SME regarding SME's violations of the TCPA and, amongst other things, instructed SME not to send any more advertising faxes to Manheim.[55] Despite receiving that letter and having actual notice of the TCPA and its prohibitions, SME continued to send unsolicited advertisements to the fax machines belonging to Manheim and the members of the proposed class,[56] making class-wide injunctive relief appropriate.

### F. A class action is a superior method of adjudicating what would otherwise be thousands of identical TCPA claims.

Rule 23(b)(3) provides that a class action can be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As discussed earlier, Common questions of law and fact just do not predominate over any individual issues in this case, common questions are the only issues.[57] That leaves the issue of whether a class action is superior to other available methods for fairly and efficiently adjudicating this

---

[54] Doc. 32 at ¶¶ 58–60.

[55] Doc. 32 at ¶ 41.

[56] Doc. 32 at ¶ 42.

[57] *See* pages 14–15 and n.42, *supra.* (discussing common questions of law or fact do not predominate, they are the only questions).

case.[58]

It is difficult to imagine a case better suited for class certification than this one. The TCPA claims in this case are not just similar, they are identical. Based on the same fax transmissions, each proposed class member could assert the identical TCPA claims as Manheim, seeking the same statutory damages and injunctive relief. Each claim would literally be a carbon copy of the others.

The burden and expense of individual prosecutions makes a class action superior to other available methods of resolution in this case. Absent a class action, it would be difficult, if not impossible, for individual members of the proposed class to obtain effective relief.

## IV.    The notice plan satisfies due-process requirements.

Due process requires notice to absent class members that is the best practicable and that is reasonably calculated under all the circumstances to apprise them of the proposed settlement and afford them an opportunity to present their objections, opt-out, or file claims.[59]

---

[58] When settling a class action, a plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." [internal citation omitted]).

[59] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992); *Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 429–30 (D.S.C. 2011).

In this case, notice of the settlement will be faxed to all class members using the same database of fax numbers that SME used to send its advertising faxes.[60] That is "the best notice that is practicable under the circumstances"[61] because, while SME has all class members' fax numbers, it does not have their mailing addresses. Notice of the settlement, the Settlement Agreement itself, and other case-related documents will be published on the Internet on a website exclusively devoted to providing the public with information about this case and the proposed settlement. A toll-free telephone number staffed with live operators will also be established to field questions about the case and the proposed settlement.

The notice plan to be utilized in this case satisfies due-process requirements.[62]

## V.    The proposed schedule for settlement approval.

Attached as Exhibit PA to the Settlement Agreement and as Exhibit B to this brief is a proposed order granting this motion for preliminary approval of the settlement. The proposed order places settlement approval on the following schedule, which provides for

---

[60] If the initial fax to a particular fax number does not result in a confirmed successful transmission, the fax will be resent to that number on up to two separate occasions to try to achieve a confirmed successful transmission.

[61] FED. R. CIV. P. 23(c)(2)(B).

[62] Notice programs similar to the one proposed here have been approved by courts. *Gans v. Leiserv, Inc.*, No. 02 CC-002115, 2004 WL 5905083 (Mo. Cir. Ct. Dec. 15, 2004); *A Fast Sign Co. v. Am. Home Servs., Inc.*, No. 2003-CV-77276 (Ga. Fulton Co. Super. Fe. 20, 2008); *Girards v. Intercontinental Hotels Corp.*, 2007 TCPA Rep. 1724 (Tex. Dist. Aug. 27, 2007); *Brodeur v. Lou Fusz Automotive Network, Inc.*, 2006 TCPA Rep. 1541 (Mo. Cir. June 30, 2007); *Construction Consulting Group, LTC v. Gersten Fin. & Ins., Inc.*, 2003 TCPA Rep. 1342 (Ill. Cir. Dec. 16, 2003).

a fair-but-prompt approval process aimed at providing class members monetary relief in a timely manner:

| Fax Notice (Exhibit N-1 to the Settlement Agreement) sent to class members | within 30 days of the entry of the Order preliminarily approving the settlement |
| --- | --- |
| This motion, the Fax Notice, the Detailed Notice (Exhibit N-2 to the Settlement Agreement), a Claim Form, the Amended Complaint, the Court's Order preliminarily approving the Settlement Agreement, and the Settlement Agreement published to the Internet | within 30 days of the entry of the Order preliminarily approving the settlement |
| Deadline for class members to submit claims or opt-out of the class | 100 days from the entry of the Order preliminarily approving the settlement |
| Deadline for class members to file objections to any term of the proposed settlement | 100 days from the entry of the Order preliminarily approving the settlement |
| Final fairness hearing | date to be set by the Court |
| Class Counsel to file motion for final approval[63] | at least 14 days before final fairness hearing |
| Class Representative to file motion for case-contribution award | at least 14 days before final fairness hearing |
| Class Counsel to file motion for attorneys' fees and expenses[64] | at least 14 days before final fairness hearing |
| Payments to class members | within 10 days of Final Approval of the settlement |

---

[63] The Claims Administrator will post this motion to the settlement website within three business days of the motion being filed.

[64] The Claims Administrator will post this motion to the settlement website within three business days of the motion being filed.

**Conclusion**

The settlement is the product of informed, arms-length negotiations between Manheim, SME, and their respective counsel. The settlement provides tangible benefits to the Class that are fair, adequate, and reasonable in light of the risks associated with continuing litigation. This Court should grant preliminary approval of the proposed settlement.

Respectfully submitted, this 7th day of July 2015.

| | |
|---|---|
| /s/ J. Clarke Newton | /s/ Marc B. Hershovitz |
| J. Clarke Newton, Esq. (ID No. 11598) | Marc B. Hershovitz (GA Bar No. 349510) |
| John S. Nichols, Esq. (ID No. 02535) | (Admitted *Pro Hac Vice*) |
| BLUESTEIN, NICHOLS, THOMPSON & | Marc B. Hershovitz, P.C. |
| DELGADO, LLC | One Alliance Center, 4th Floor |
| 1614 Taylor Street | 3500 Lenox Road |
| Columbia, South Carolina 29201 | Atlanta, GA 30326 |
| (803) 779-7599 | (404) 262-1425 |
| (803) 771-8097 (fax) | (404) 262-1474 (fax) |
| cnewton@bntdlaw.com | marc@hershovitz.com |
| jsnichols@bntdlaw.com | |

Attorneys for Plaintiff

**Certificate of Service**

I hereby certify that on July 7, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Krishna Narine, Esq.
Michael A. Timbes, Esq.
Thomas J. Rode, Esq.
John S. Nichols, Esq.
J. Clarke Newton, Esq.
Marc B. Hershovitz, Esq.

/s/ J. Clarke Newton
J. Clarke Newton, Esq. (ID No. 11598)
John S. Nichols, Esq. (ID No. 02535)
BLUESTEIN, NICHOLS, THOMPSON &
DELGADO, LLC
1614 Taylor Street
Columbia, South Carolina 29201
(803) 779-7599
(803) 771-8097 (fax)
cnewton@bntdlaw.com
jsnichols@bntdlaw.com