**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Carol Manheim d/b/a Plantation Plaza Therapy Center, individually and on behalf of all other persons similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>SME Inc., USA d/b/a Superior Medical Equipment,<br><br>        Defendant. | Case No. 2:14-cv-02856-DCN |

## Plaintiff Class's Motion and Supporting Brief for Final Approval of Settlement

This Court previously certified this case to proceed as a class action for settlement purposes and granted preliminary approval to the proposed Settlement Agreement that was submitted to the Court.[1] The Class was notified of the proposed settlement in accordance with this Court's Order preliminarily approving the settlement.[2] Not one class member lodged an objection to the settlement or its terms.[3] Because the settlement is fair, adequate, and reasonable, the Class requests that the Court enter an order giving its final approval to the settlement in the form attached to this motion as Exhibit A.

---

[1] Doc. 39.

[2] Docs. 41-1 & 42-1.

[3] The deadline for objections to be filed was January 7, 2016. *See* Doc. 39.

## Factual & Procedural Background

With limited exceptions, the Telephone Consumer Protection Act or TCPA makes it illegal for one to send unsolicited advertisements, commonly called "junk faxes," to fax machines.[4] FCC regulations also prohibit advertisers from sending junk faxes.[5] And the TCPA allows businesses and individuals to sue for violations of the law.[6]

Sending junk faxes causes damage to those to whom the junk faxes are sent. Those to whom junk faxes are sent have their telephone lines tied up and their paper and toner taken and used to print the senders' advertisements. Junk faxes are the equivalent of junk mail sent postage due. Sending fax advertisements invades the privacy of those to whom the junk faxes are sent. These unwanted faxes prevent fax machines from receiving authorized faxes, prevent fax machines from being used for authorized outgoing faxes, cause undue wear and tear on the fax machines to which the junk faxes are sent, and require additional labor by those to whom the junk faxes are sent to attempt to discern the source and purpose of the unsolicited message. Sending unwanted fax advertisements also consumes a portion of the limited capacity of the telecommunications infrastructure serving those to whom they are sent.

After SME sent several unsolicited advertisements to Manheim's fax machine, Manheim filed this case on July 16, 2014, for herself and on behalf of a putative class of

---

[4] 47 U.S.C. § 227(b)(1)(c).

[5] 47 C.F.R. § 64.1200(a)(3).

[6] 47 U.S.C. §227(b)(3).

individuals and businesses to whom SME sent its unsolicited advertisements. Manheim

later filed an Amended Complaint (Doc. 32) on February 6, 2015.

As alleged in the Amended Complaint, SME or agents acting on its behalf sent the

same fax transmissions of material advertising the commercial availability of SME's

property, goods, or services to Manheim and thousands of other persons throughout the

United States.[7] SME did not have the express invitation or permission of Manheim to

send its advertisements to her fax machine, nor did SME have express invitation or

permission from anyone else to send advertisements to their fax machines.[8]

Before filing this lawsuit, Manheim's counsel wrote to SME regarding SME's

violations of the TCPA and, amongst other things, instructed SME not to send any more

advertising faxes to Manheim.[9] Despite receiving that letter, SME continued to send

unsolicited advertisements to the fax machines belonging to Manheim and others in

violation of the law.[10]

Manheim served SME with the initial Complaint on August 13, 2014, along with her

Motion for Class Certification.[11] Soon thereafter, the parties' counsel initiated

conversations about possible resolution of the litigation.

The parties entered into a Confidentiality Agreement on October 7, 2014, and began

---

[7] Doc. 32 at ¶¶ 29–42.

[8] Doc. 32 at ¶¶ 39–40.

[9] Doc. 32 at ¶ 41.

[10] Doc. 32 at ¶ 42.

[11] Doc. 8-1.

an exchange of documents and information for the purpose of negotiating a settlement.

On January 21, 2015, SME filed a Motion to Dismiss (Doc. 27) with a supporting

Memorandum (Doc. 27-1), and a Response to Plaintiff's Motion for Class Certification

(Doc. 28). On February 6, 2015, Manheim filed her Response to SME's Motion to

Dismiss (Doc. 31) and an Amended Complaint (Doc. 32). At the same time, the parties

continued to negotiate a settlement of the litigation.

Months of extensive negotiations culminated in the parties executing a

Memorandum of Understanding on April 3, 2015, that outlined an agreement to settle and

resolve all issues in this case on a class-wide basis. Part of the negotiations involved SME

providing Manheim's counsel with financial information going back to 2011. After the

Memorandum of Understanding was executed, SME produced additional documents and

data requested by Manheim to confirm, among other things, certain aspects of the

settlement and to value the injunctive relief that is part of the settlement. Working from

the Memorandum of Understanding, the parties prepared the Settlement Agreement that is

attached as Exhibit A, which was executed on July 1, 2015.

On July 7, 2015, Manheim filed a motion seeking certification of this action as a

class action for purposes of settlement and preliminary approval of the proposed

settlement.[12] After a hearing, on September 29, 2015, this Court certified this case to

proceed as a class action for settlement purposes and preliminarily approved the proposed

---

[12] Doc. 36.

2:14-cv-02856-DCN    Date Filed 02/02/16    Entry Number 43    Page 5 of 16

settlement.[13]

Claims Administrator CSC Services Group, LLC then notified the Class of the proposed settlement in accordance with the Court's Order preliminarily approving the settlement.[14] CSC Services faxed notice of the settlement to all class members using the same database of fax numbers that SME originally used to send its junk faxes.[15] The faxed notices directed class members to a website, www.smeclassaction.com, published and maintained by CSC Services, where detailed information about the case and the proposed settlement was posted, and where class members could obtain claim forms to submit claims. The website also provided class members with instructions on how to object to the proposed settlement if they found anything objectionable with it. The website has been operational 24 hours a day, 7 days a week, since October 29, 2015.[16] A toll-free telephone number staffed with live operators was also established to field questions about the case and the proposed settlement.[17]

Class members have timely submitted 177 valid claims, and no one has filed an objection to the settlement.

---

[13] Doc. 39.

[14] Docs. 41-1 & 42-1.

[15] Doc. 41 at 2; Doc. 39 at 4; Doc. 42; Doc. 36-1 at 10..

[16] Doc. 41-1 at 3–4.

[17] Doc. 41 at 3.

— 5 —

### Argument & Citation of Authority

Under Federal Rule of Civil Procedure 23(e), a class action cannot be settled without judicial approval. In order to approve a proposed settlement, the Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties.[18] The Court must also find that notice of the settlement was given to the Class in a manner that satisfies due process.[19]

In weighing whether the proposed settlement is fair, adequate, and reasonable, the Court is entitled to rely upon the judgment of the experienced counsel representing the Class.[20] Indeed, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."[21]

**1.      The Settlement Agreement was the product of arm's-length negotiations and there is no evidence of fraud or collusion.**

"The conclusion that the parties did not collude in arriving at a settlement involves a negative analysis: whether there is any reason to believe otherwise."[22] There is nothing to suggest any fraud in the settlement process in this case, nor is there any evidence of improper conduct. To the contrary, the parties vigorously negotiated the settlement of this

---

[18] *E.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); FED. R. CIV. P. 23(e)(2).

[19] *See* FED. R. CIV. P. 23(e)(1) ("the court must direct notice in a reasonable manner to all class members who would be bound by the proposal").

[20] *Blank v. Talley Indus., Inc.*, 64 F.R.D. 125, 132 (S.D.N.Y. 1974). *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976); *Cotton*, 559 F.2d at 1330.

[21] *Cotton*, 559 F.2d at 1330.

[22] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993).

case.

Class Counsel are experienced, highly capable, and well-known attorneys. The defendant is represented by experienced and highly capable attorneys. Class Counsel zealously pursued the best interests of the Class. Defense counsel were equally ardent in representing the interests of the defendant.

The settlement negotiations involved good-faith bargaining by all involved, and a settlement was reached only after extensive, hard-fought negotiations. As a result of the negotiations, the Settlement Agreement confers a significant benefit to the Class and concludes the litigation for all parties without further risk or expense.

There is no evidence or even an allegation of fraud, collusion, or that the Settlement Agreement was not negotiated at arm's length.

## 2.    **The settlement is fair, adequate, and reasonable.**

To approve a settlement in a class action, a court must find that the settlement is fair, adequate, and reasonable.[23] This determination is left to the sound discretion of the trial court.[24]

In determining whether to approve the settlement, the Court should be mindful of the "strong judicial policy favoring settlement"[25] and that "compromise is the essence of

---

[23] *E.g.*, *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

[24] *Id.*

[25] *Id.*

settlement."[26] The Court should also be mindful that "[o]nce preliminary approval has

been granted, a class action settlement is presumptively reasonable."[27]

In weighing whether the proposed settlement is fair, adequate, and reasonable, the

Court is entitled to rely upon the judgment of the experienced counsel representing the

Class.[28] It is not relevant whether a different set of participants may have negotiated a

different settlement.[29] "[The Court], absent fraud, collusion, or the like, should be hesitant

to substitute its own judgment for that of counsel."[30]

Generally speaking, in determining whether to approve a class-action settlement,

courts consider: (1) the stage of the proceedings at which the settlement was achieved;

(2) the likelihood of success at trial; (3) the range of possible recovery and the point on or

below the range of possible recovery at which a settlement is fair, adequate, and

reasonable; (4) the complexity, expense, and duration of litigation; and (5) the substance

and amount of opposition to the settlement.[31]

### A. The stage of the proceedings at which the settlement was achieved.

The parties clearly understood the strengths and weaknesses of their respective

---

[26] *Id.*

[27] *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000).

[28] *Blank*, 64 F.R.D. at 132; *Flinn*, 528 F.2d at 1173; *Cotton*, 559 F.2d at 1330; *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312–13.

[29] *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

[30] *Cotton*, 559 F.2d at 1330.

[31] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 at 312.

cases. When a settlement was reached, the pleadings were closed and a motion to dismiss was pending. While formal discovery had not taken place, the parties engaged in an informal exchange of information that likely covered a substantial portion of the discovery that would have been done were a settlement not reached.

The Settlement Agreement was the product of months of extensive negotiations between the parties. The settlement occurred only after the parties informally exchanged information regarding SME's insurance policies and the financial health of SME so that Class Counsel could assess the likelihood of being able to collect more money for the Class if a voluntary resolution were not achieved.

### B.  The likelihood of success at trial.

This case presents risks for both sides. Class Counsel's evaluation of the settlement is based on calculations regarding the risks of continuing litigation.

First, one must consider the complexity, expense, and potential duration of litigation. Class-action cases are highly complex, expensive, and uncertain endeavors. Continued litigation would be costly and would delay any payments to the Class by several years, or more. While the TCPA is a strict-liability statute and Class Counsel believe that SME's liability is clear, defense counsel in other cases have been able to tie up meritorious claims for years, sometimes for more than a decade. Moreover, class certification presents numerous risks and costs. If the litigation is not settled now, both sides will spend considerable time and expense in discovery and filing dispositive motions. Then, if the dispositive motions are not granted, the parties will participate in a trial. If the Class were

not successful at trial, the Class would get no relief. And, even if the Class were successful at trial, it is fair to assume that SME would file an appeal.

Second, other than for settlement purposes, a class has not yet been certified. While Class Counsel believes that this case easily meets the standards for class certification, SME would staunchly oppose class certification outside of the present settlement context. If no class is certified, then it would be virtually impossible for the class members to get the relief provided by the settlement. The attorney's fees and expenses associated with any individual lawsuit against SME are simply too great compared to the possible individual recovery, and it is thus very unlikely that any class member would sue on their own.

Third, continued litigation could cause significant financial harm to SME, which could result in harm to the Class. Class Counsel has ascertained that SME does not have insurance that would cover (or even provide a defense for) the Class's claims. Class Counsel has also reviewed financial information from SME going back to 2011. SME is a successful closely held business, but it does not have the financial resources to risk a class-wide judgement in this case. There is a reasonable risk that, should this settlement not be approved, SME would cease operations and seek bankruptcy protection, thereby putting any recovery for the Class at risk (and would certainly result in a recovery less than that achieved for the Class through the settlement under consideration).

All of this means that failure to settle jeopardizes payments to the Class and, at a minimum, delays any payments by several years.

Given all of the risks (to both sides), it is clear that this factor weighs heavily in favor of approval of the settlement.[32] Recovering more for the Class through continued litigation is, at best, highly unlikely.

### C.  The settlement is within the range of possible recoveries.

In assessing the settlement, this Court must look to the range of possible recoveries that the Class could achieve through further litigation and then combine that assessment with the likelihood of the Class being successful in those efforts to determine whether the settlement falls within the range of recoveries that is fair.[33]

Technically, the range of possible recoveries in this case is zero to $162 million plus interest. But realistically, given SME's size and finances and the risk continued litigation poses to the company's continued operations, the recovery achieved by the settlement under consideration likely exceeds the upper end of the possible recoveries if the settlement is not approved and litigation continues.

"[A] settlement is a compromise, a yielding of the highest hopes in exchange for

---

[32] *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 539–40 (D.N.J. 1997) ( holding "[b]ecause establishing liability at trial and prevailing on appeal is not, and never can be, guaranteed, and because the Proposed Settlement is certain and avoids many of the obstacles potentially implicated by a trial, on balance the risks of establishing liability weigh in favor of approving the settlement"); *see also Adams v. Robertson*, 676 So. 2d 1265, 1301 (Ala. 1995) ("[T]his settlement achieves a definite and certain result for the benefit of class members which is preferable to continuing litigation in which class members must necessarily confront and overcome many obstacles, the prospect of an uncertain result, … and other uncertainties.").

[33] *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000).

certainty and resolution."[34] The issue that this Court must decide is whether the settlement

is fair, adequate, and reasonable, not whether one could conceive of a better settlement.[35]

There is nothing to suggest that anything can be gained for the Class by rejecting the

settlement and proceeding with further litigation.

### E.  The complexity, expense, and duration of continued litigation.

This factor is intended to capture the probable costs, in both time and money, of

continued litigation versus settlement.[36] "By measuring the costs of continuing on the

adversarial path, a court can gauge the benefit of settling the claim amicably."[37]

The alternative to the settlement under consideration is to expend countless hours

and dollars in litigation. That will drain the assets of all concerned, most importantly the

assets of SME, a successful closely held business, but one that does not have the financial

resources to pay anything close to any class-wide judgement that this Court could enter

after further litigation.

### F.  There is no opposition to the settlement.

Aside from reviewing the terms of the settlement itself, courts also review the

---

[34] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995).

[35] *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 534 (D.N.J. 1997).

[36] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 812.

[37] *Id.*

amount of any opposition to the settlement.[38]

One business opted out of the Class, and no objections to the settlement have been filed. The lack of any opposition to the settlement supports its being approved by the Court.[39]

**3.    The notice to the Class satisfied due-process requirements.**

The notice to the Class of the proposed settlement, of class members' right to object to it, and of how class members could file claims under it satisfied due-process requirements. Due process requires notice to absentee class members that is the best practicable and that is reasonably calculated under all the circumstances to apprise them of the proposed settlement and afford them an opportunity to present their objections or file claims.[40] It does not require that each class member receive actual notice.[41]

In this case, notice of the settlement was faxed to all class members using the same database of fax numbers that SME originally used to send its junk faxes.[42] Five weeks

---

[38] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312.

[39] *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976) (holding class members' failure to object, after notice, to the settlement is a proper consideration for the trial court).

[40] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

[41] *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950) (holding "reasonable risks that notice might not actually reach every beneficiary are justifiable."); *Weigner v. City of New York*, 852 F.2d 646, 651 (2d Cir. 1988) (stating the Supreme Court is obviously aware that not every notice is received by the addressee).

[42] If the initial fax to a particular fax number did not result in a confirmed successful

(continued...)

after the Claims Administrator faxed the notice of the settlement to all class members, the

Claims Administrator faxed the notice of settlement to all class members a second time.[43]

Further, notice of the settlement—and the Settlement Agreement itself—was published at

www.smeclassaction.com, a website exclusively devoted to providing the public with

information about this case and the proposed settlement. A toll-free telephone number

staffed with live operators was also established to field questions about the case and the

proposed settlement.

The notice plan utilized in this case satisfies the due-process requirements governing

notices in class actions.[44]

**Conclusion**

A settlement has been reached subject to approval from this Court. The settlement is

the product of informed, arm's-length negotiations between the Class Representative and

Class Counsel on one hand and SME on the other. It provides tangible benefits to the

Class that are fair, adequate, and reasonable in light of the risks associated with

continuing litigation. This Court should grant final approval of the proposed settlement.

---

[42](...continued)
transmission, the fax was resent to that number on up to two separate occasions to try to achieve a confirmed successful transmission. *See* Doc. 41-1 at 2; Doc. 39 at 4.

[43] Doc. 42-1 at 2–3.

[44] *See Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (holding "the state's obligation to use notice 'reasonably certain to inform those affected' does not mean that all risk of non-receipt must be eliminated"); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950) (holding "reasonable risks that notice might not actually reach every beneficiary are justifiable"),

Respectfully submitted this 2nd day of February 2016.

/s/ J. Clarke Newton
J. Clarke Newton, Esq. (ID No. 11598)
John S. Nichols, Esq. (ID No. 02535)
BLUESTEIN, NICHOLS, THOMPSON &
DELGADO, LLC
1614 Taylor Street
Columbia, South Carolina 29201
(803) 779-7599
(803) 771-8097 (fax)
cnewton@bntdlaw.com
jsnichols@bntdlaw.com

/s/ Marc B. Hershovitz
Marc B. Hershovitz (GA Bar No. 349510)
(Admitted *Pro Hac Vice*)
Marc B. Hershovitz, P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, GA 30326
(404) 262-1425
(404) 262-1474 (fax)
marc@hershovitz.com

Attorneys for Plaintiff & Class Counsel

**Certificate of Service**

I hereby certify that on February 2, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Krishna Narine, Esq.
Michael A. Timbes, Esq.
Thomas J. Rode, Esq.
John S. Nichols, Esq.
J. Clarke Newton, Esq.
Marc B. Hershovitz, Esq.

/s/ J. Clarke Newton
J. Clarke Newton, Esq. (ID No. 11598)
John S. Nichols, Esq. (ID No. 02535)
BLUESTEIN, NICHOLS, THOMPSON & DELGADO, LLC
1614 Taylor Street
Columbia, South Carolina 29201
(803) 779-7599
(803) 771-8097 (fax)
cnewton@bntdlaw.com
jsnichols@bntdlaw.com