**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Carol Manheim d/b/a Plantation Plaza Therapy Center, individually and on behalf of all other persons similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>SME Inc., USA d/b/a Superior Medical Equipment,<br><br>     Defendant. | Case No. 2:14-cv-02856-DCN |

## Class Counsel's Application for an Award of Reasonable Attorneys' Fees and Reimbursement of Expenses

A lawyer who recovers a common fund for the benefit of persons other than his client is entitled to a reasonable attorney's fee from the fund as a whole.[1] The reason for this is that someone who obtains the benefit of a lawsuit without contributing to its costs is unjustly enriched at the successful litigant's expense.[2]

Class Counsel requests that they be awarded $162,500 as reasonable attorneys' fees, which represents 25% of the total cash consideration and 16.67% of the value of the total benefit of the settlement to the Class, plus $3,809.84 as reimbursement for the reasonable, actual out-of-pocket expenses they incurred in prosecuting this case. Defendant SME Inc.,

---

[1] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 476 (1980).

[2] *Id.* at 478.

— 1 —

USA, does not oppose the award of these fees and expenses requested by this motion,[3]

nor has any class member objected.[4]

Courts use one of two methods to determine the amount of attorney's fees to award in these situations: the "lodestar" method[5] and the "percentage-of-fund" method.[6] While the Fourth Circuit has not announced a preference for either method,[7] most courts use the percentage-of-fund method.[8] This is because the percentage-of-fund method encourages

---

[3] *See* Doc. 36-1 at 14 (Settlement Agreement at 15 (§ 14)).

[4] Class Counsel's fee request was detailed in the Settlement Agreement. No objections have been filed to the terms of the settlement.

[5] "Under the 'lodestar' method, a district court identifies a lodestar figure by multiplying the number of hours expended by class counsel by a reasonable hourly rate. The court may then adjust the lodestar figure using a 'multiplier' derived from a number of factors, such as the benefit achieved for the class and the complexity of the case."

*Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 462 (S.D.W. Va. 2010).

[6] "Under the 'percentage of fund' method, the court awards the fee as a percentage of the common fund. The percentage of fund method operates similarly to a contingency fee arrangement in that the attorneys receive a percentage of the final monetary value obtained for their clients. Unlike contingency fees, however, the percentage fee award is determined *ex post*, at the end of the litigation, rather than by an *ex ante* arrangement."

*Id.* (internal citation omitted).

[7] *Id.* at 463; *but see Savani v. URS Prof'l Solutions LLC*, No. 1:06–cv–02805–JMC, 2015 WL 4644463, at *2 (D.S.C. Aug. 4, 2015) (stating "[w]ithin this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees"); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 437–38 (D. Md. 1998) (noting endorsement of percentage-of-recovery method by several courts in the Fourth Circuit).

[8] *E.g.*, *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d at 462 (finding "[c]ourts have increasingly favored the percentage method for calculating attorneys' fees in common fund cases"); *Goldenberg*, 33 F. Supp. 2d at 437–38 (noting endorsement of percentage-of-recovery method by several courts in the Fourth Circuit); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 484 (S.D.N.Y. 1998) (discussing "the trend among courts is to apply the

(continued...)

efficiency and judicial economy and aligns the interests of the lawyers with the class.[9]
"[E]every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."[10]

## Background for Awarding Class Counsel its Attorneys' Fees

In common-fund cases, class counsel are entitled to compensation for their services where a common fund is created by their efforts.[11] The common-fund doctrine provides that when someone maintains a successful action that creates a common fund in which others share, reasonable attorney's fees should be paid from the fund as a whole. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without

---

[8](...continued)
percentage approach"); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515–16 (6th Cir.1993) (noting "trend toward adoption of a percentage of the fund method," and permitting use of the "percentage of the fund method" in common-fund cases); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (holding fee award should be based on the percentage that counsel "would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (holding the appropriate method for calculating attorney's fee award in a common-fund case is the percentage-of-the-fund method, rather than the lodestar method); *Third Circuit Task Force Report*, 208 F.R.D. 340, 344 (2002) (finding that "[a] percentage fee, tailored to the realities of a particular case, remains superior to any other means of determining a reasonable fee for class counsel"); *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 787 (E.D. Va. 2001) (recognizing "seven circuits have explicitly approved the use of the percentage-of-recovery approach in common-fund cases"); *Friedrich v. Fid. Nat'l Bank*, 545 S.E.2d 107, 110 (Ga. Ct. App. 2001) (finding "the percentage of the fund approach to be the most equitable, sensible, and fair" and is thus "the preferred method of determining [attorney's] fees").

[9] *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007).

[10] *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991).

[11] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993).

contributing to its cost are unjustly enriched at the successful litigant's expense."[12] Courts prevent this inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.[13] As the United States Supreme Court recognized, "[u]nless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. … [Assessing attorney's fees from the common fund] rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery."[14]

A court administering a class action has the inherent authority, as well as a duty, to ensure that the amount of attorneys' fees are fair and proper.[15] The power to determine and award attorneys' fees derives from a court's duty to determine the overall reasonableness of, and give final approval to, class-action settlements.

Because the amount of any fee must be determined upon the facts of each case, there is no hard-and-fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee.[16]

The primary factor used to determine the fee award is the measure of the recovery

---

[12] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

[13] *Id.*

[14] *Id.* at 480.

[15] *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999).

[16] *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 692 (M.D. Ala. 1988).

— 4 —

achieved by counsel, including any non-monetary benefits conferred upon the class (in other words, the total benefit provided to the class).[17] Other factors to be considered include:

1. the time and labor required;

2. the novelty and difficulty of the questions involved;

3. the skill requisite to perform the legal service properly;

4. the preclusion of other employment by the attorney due to acceptance of the case;

5. the customary fee for like work;

6. the attorneys' expectations at the outset of the litigation;

7. time limitations imposed by the client or the circumstances;

8. the amount involved and the results obtained;

9. the experience, reputation, and ability of the attorneys;

10. the "undesirability" of the case;

11. the nature and the length of the professional relationship with the client;

12. awards in similar cases.[18]

## The Fees Sought Are Reasonable

Class Counsel are seeking $162,500 as reasonable attorneys' fees, which represents 25% of the total cash consideration and 16.67% of the value of the total benefit of the

---

[17] *Camden I Condo. Ass'n*, 946 F.2d at 773–75.

[18] *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 & accompanying text (4th Cir. 1978).

settlement to the Class,[19] plus $3,809.84 as reimbursement for the reasonable, actual out-of-pocket expenses they incurred in prosecuting this case. Under the Court's Preliminary Approval Order, class members were notified of the proposed settlement and given the opportunity to object to the settlement or file claims. No one objected, and class members timely filed 177 valid claims. As the discussion below establishes, Class Counsel's fee application is reasonable and should be approved.

**1.     The amount involved and the results obtained.**

"The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."[20] The result here was a common fund of $650,000 combined with class-wide injunctive relief valued at $325,000 for a total class benefit of $925,000.

The settlement provided SME would pay up to $650,000, from which the following would be paid:

1. Class members' claims (each participating class member would receive up to $500);

2. The incentive payment to the Class Representative;

3. Class Counsel's attorneys' fees and expenses; and

---

[19] The settlement includes cash consideration of $650,000, plus injunctive relief that the parties value at $325,000.

[20] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 351.

We deviate from the order in the list of factors set forth above to discuss this most important factor first. Class Counsel also note that it is not necessary to consider every factor. *See In re MI Windows & Doors Inc. Prods. Liab. Litig.*, No. 2:12-mn-00001-DCN, 2015 WL 4487734, at *2 (D.S.C. July 23, 2015) (citing *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990).

      4. The class-notice and claims-administration costs associated with seeking approval of and administering the settlement.

The settlement also provided that the Court would permanently enjoin SME from using any fax machine, computer, or other device to send any unsolicited advertisements to class members' fax machines. Every class member, whether or not they claim their share of the cash consideration, benefits from the class-wide injunctive relief. The parties value this injunctive relief at $325,000.[21]

Any of the $650,000 committed to be paid by SME that is not paid out in claims or attorneys' fees, or paid out to cover other authorized expenses, is required to be returned to SME.[22]

## 2. The time, labor, and expense involved.

This case has consumed substantial time, attention, resources, and energy from Class Counsel.

Before filing this lawsuit, Class Counsel wrote to SME regarding SME's violations

---

[21] The value of this injunctive relief is real. Before filing this lawsuit, Class Counsel wrote to SME regarding SME's violations of the TCPA and, amongst other things, instructed SME not to send any more advertising faxes to Carol Manheim, who is now the Class Representative. After receiving that letter and having actual notice of the TCPA and its prohibitions, SME repeatedly sent unsolicited advertisements to the fax machines belonging to the Class, making class-wide injunctive relief appropriate and of real value to the class. The value to parties assigned to the injunctive relief—$325,000—is a small fraction of the statutory damages SME would be liable for and the Class would otherwise be entitled to recover for one round of junk faxing to the class, which would be more than $10 million (21,628 × $500). Given that SME sent three rounds of junk faxes to the Class after receiving Class Counsel's letter and might have sent more had the Class Representative not filed this lawsuit, $325,000 is a very reasonable value to assign to the class-wide injunctive relief in this case.

[22] *See* Doc. 36-1 at 9 (Settlement Agreement at 8 § 3(c)).

of the TCPA and, amongst other things, instructed SME not to send any more advertising faxes to the Class Representative.[23] Despite receiving that letter, SME continued to send unsolicited advertisements to the fax machines belonging to Manheim and others in violation of the law.[24]

Manheim served SME with the initial Complaint on August 13, 2014, along with her Motion for Class Certification.[25] Soon thereafter, the parties' counsel initiated conversations about possible resolution of the litigation.

The parties entered into a Confidentiality Agreement on October 7, 2014, and began an exchange of documents and information for the purpose of negotiating a settlement.

On January 21, 2015, SME filed a Motion to Dismiss (Doc. 27) with a supporting Memorandum (Doc. 27-1), and a Response to Plaintiff's Motion for Class Certification (Doc. 28). On February 6, 2015, Manheim filed her Response to SME's Motion to Dismiss (Doc. 31) and an Amended Complaint (Doc. 32). At the same time, the parties continued to negotiate a settlement of the litigation.

Months of extensive negotiations culminated in the parties executing a Memorandum of Understanding on April 3, 2015, that outlined an agreement to settle and resolve all issues in this case on a class-wide basis. Part of the negotiations involved SME providing Manheim's counsel with financial information going back to 2011. After the

---

[23] Doc. 32 at ¶ 41.

[24] Doc. 32 at ¶ 42.

[25] Doc. 8-1.

Memorandum of Understanding was executed, SME produced additional documents and data requested by Manheim to confirm, among other things, certain aspects of the settlement, and to value the injunctive relief that is part of the settlement. Working from the Memorandum of Understanding, the parties prepared the Settlement Agreement that was executed on July 1, 2015. Class Counsel then filed its motion for preliminary approval of the settlement.[26]

As of this writing, Class Counsel have, collectively devoted more than 400 hours to this case and have advanced all costs and expenses associated with this case, which total almost $3,000.[27]

### 3. The professional skills required to litigate successfully and the experience, reputation, and ability of the attorneys.

This case required counsel who were knowledgeable about the TCPA. It required counsel with a detailed understanding of the regulatory framework established by the FCC. It required counsel who were experienced in complex and class-action litigation. It required counsel who understood the nuances of insurance-coverage law (ultimately Class Counsel determined there was no available insurance coverage for the Class's claims). And it required counsel who were in a position to assume the risks associated with this action—including the economic burdens of carrying the case—and who were determined to vigorously litigate the case to conclusion. Class Counsel filled those requirements.

---

[26] *See* Doc. 36.

[27] Declaration of John S. Nichols (attached as Exhibit A).

"The standing and prior experience of plaintiff's counsel are relevant in considering applications for counsel fees."[28] The quality of the opposition is also relevant.[29] Class Counsel are recognized as leading and skillful practitioners in the field of complex litigation, class actions, and the TCPA. And the defendant has been represented and advised by well-respected, experienced, and skillful advocates.

### 4.   The preclusion of other employment.

"This factor 'involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes.'"[30]

Institutional law firms can hire additional lawyers and paralegals with the confidence that their clients' payment of hourly bills will cover their expenses and overhead and ensure a steady income regardless of the result of a particular case. Class Counsel could not do that.

Among Class Counsel, Marc Hershovitz and his firm, Marc B. Hershovitz, P.C. served as lead counsel. The firm consists of one lawyer and his paralegal. The work on this case by Hershovitz and his paralegal accounted for the majority of the time spent on this case by Class Counsel collectively. The firm committed significant resources, both

---

[28] *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).

[29] *Id.*

[30] *E.g.*, *Bowen v. SouthTrust Bank of Ala.*, 760 F. Supp. 889, 898 (M.D. Ala. 1991).

economic and personal, to further the litigation and the interests of the Class. The firm's operation depends upon court-awarded attorneys' fees to enable it to take cases like this one that others decline.

Though experienced and prominent in complex litigation, Bluestein, Nichols, Thompson & Delgado, LLC is numerically small. The firm has only 10 attorneys. The firm assigned two of those attorneys, John Nichols and Clarke Newton, to work on this case. The firm committed significant resources, both economic and personal, to the successful conclusion of this action. The firm's operation depends upon court-awarded attorneys' fees to enable it to take cases like this one that others decline.

When Carol Manheim requested Class Counsel to represent her because SME's junk faxing interfered with the operation of her business, Class Counsel committed to representing her and the Class for as long as it took to right this wrong.

Class Counsel chose to accept the risks of prosecuting this case and to forego other more certain litigation and work. Until the settlement is finally approved, those risks remain real. Now that Class Counsel have obtained a meaningful result, they should be compensated adequately.

5. **Customary fees awarded in class-action cases.**

Unless an action involves a statute that authorizes an award of attorneys' fees separate from the underlying recovery being sought, courts must determine the amount of fees to which Class Counsel are entitled in class-action cases like this one. The TCPA does not provide for a separate award of attorneys' fees. Thus, Class Counsel's fees are in the

nature of contingent fees and must be set or approved by the Court.

Compensation for Class Counsel was contingent upon their obtaining a recovery for the Class. Class Counsel undertook their representation of Manheim and the Class with the expectation of receiving their fee solely out of the fund their efforts created in an amount to be determined by the Court. Class Counsel shouldered the entire risk of failing to achieve a successful and substantial result for the Class.

Even with vigorous and competent efforts, success in contingent litigation is never assured. The only certainty for Class Counsel in prosecuting this case was that there would be no fee without a successful result, and that such a result would be realized only after lengthy and difficult effort. The risks of this litigation and the time, attention, resources, and energy invested by Class Counsel justify the requested fee.

This matter involved relatively small individual damages. But for the procedural vehicle of Rule 23, it is unlikely this case would have been litigated. As a result of Class Counsel's work, businesses around the nation will receive $500 each, and they are now empowered with knowledge that junk faxing is illegal, which will discourage future junk-fax advertising campaigns. The $162,500 fee request is reasonable in light of these results and is within the range of fees awarded in other cases.

In considering this Application, the Court can consider other awards in similar cases. While fee awards may vary depending on the circumstances of particular cases, several cases analyzing class-action fee awards across the country recognize that one-third is

common in a contingency-fee consumer class action like this one.[31] A one-third contingency is common in TCPA class actions.[32] But because of the early resolution of this case, Class Counsel is requesting a fee award of only 25% of the total cash consideration and 16.67% of the value of the total benefit of the settlement to the Class.

That the amount sought is within the customary range of fees awarded for actions of this type supports the award sought by Class Counsel.

### 6.  Undesirability of the case.

Few firms take on class-action litigation because of the required commitment of time and resources and the attendant risks of long, difficult, and unsuccessful litigation. Despite these challenges, Class Counsel made the commitment to take on this case and achieved significant benefits for the Class.

---

[31] *See*, *e.g.*, *Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007 WL 1101272, *9 (E.D. Pa. Apr. 11, 2007) (recognizing other cases holding one-third fee award is customary); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, *15 (W.D. Okla. Oct. 27, 2008) (finding a one-third fee is customary); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund, plus expenses); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149 (JLL), 2009 WL 3345762, 13, 999 (D.N.J. Sept. 10, 2009) ("The Court is aware that 33 1/3% is a standard figure for recovery in a consumer class action of the contingent-fee variety"); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("most fees appear to fall in the range of nineteen to forty-five percent"); *In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549 (E.D. La. 2009) (fee award of 32% plus costs).

[32] *E.g.*, *Goans Acquisition, Inc. v. Hard Wok Cafes, Inc.*, No. 0931-CV17797, Greene County, Missouri, Circuit Court (Aug. 1, 2013); *JT's Frames, Inc. v. The Friedman Group International*, No. 07 CH 434, McHenry County, Illinois, Circuit Court (May 5, 2008).

**7.    Lack of objections.**

No objections have been filed either to the settlement or the attorneys' fees requested by Class Counsel. This supports Class Counsel's Application.[33]

**8.    The nature and length of Class Counsel's relationship with their client.**

Carol Manheim contacted Class Counsel because the defendant's junk faxing interfered with the operation of her business. After being contacted by Class Counsel and informed about the TCPA's ban on junk faxing, SME continued sending unsolicited advertisements to Manheim's business as well as all class members.

Manheim agreed that her claims should be prosecuted as a class action because doing so was the only economical way to achieve individual justice. Class Counsel committed to representing Manheim and the Class. This Court ultimately appointed Manheim as the class representative.

Class Counsel regularly apprised Manheim about the progress of the case. She was provided with a copy of every pleading filed in this action, and Class Counsel consulted with her throughout the negotiations that led to the settlement. Putting the interest of the Class ahead of her own even before this Court certified the case as a class action, Manheim rejected a settlement offer that would have compensated her while leaving the Class with no recovery.

---

[33] *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976) (holding class members' failure to object, after notice, is a proper consideration for the trial court).

**9.     The economics involved in prosecuting a class action.**

"The willingness of plaintiffs' lawyers to investigate potential causes of action, mobilize the plaintiff class, and bear the costs and risks associated with the suit leads to an increase in enforcement and provides a valuable contribution to the deterrence of corporate misconduct."[34] "[I]n order to encourage 'private attorney general' class actions brought on behalf of persons with small individual losses, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid."[35] And as the Fifth Circuit Court of Appeals recognized, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."[36]

Some courts lower fees to attorneys who achieve a quick result in a class action. But to do so would create an incentive for plaintiffs' attorneys to prolong litigation in order to "milk" as much of a fee as possible out of a case. Nevertheless, taking into consideration the quick resolution of this case, Class Counsel has limited its fee request to 25% of the total cash consideration, which comes to 16.67% of the value of the total benefit of the settlement to the Class.[37]

---

[34] Jill E. Fisch, *Aggregations, Auctions and Other Developments in the Selection of Lead Counsel Under the PSLRA*, 64 LAW & CONTEMP. PROBS. 53, 56 (2001).

[35] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 349.

[36] *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).

[37] Had Class Counsel requested a fee of 33.34% of the total class benefit in this case, which is a contingent fee frequently seen in the marketplace for legal services for traditional commercial claims, that fee would have been $325,000.

The common fund and class-wide injunctive relief established in this case is similar in type to that which was established by the trial judgment in the Supreme Court case of *The Boeing Company v. Van Gemert*.[38] As was the case in *Boeing*, the efforts of Class Counsel here resulted in a determinate fund (and class-wide injunctive relief of real value) for the benefit of every class member. Because it had a colorable claim for the return of the unclaimed money (similar to the reversionary interest enjoyed by SME here), Boeing contended that the District Court should have awarded attorney's fees from only the portion of the fund actually claimed by class members. The Supreme Court disagreed and held that the attorney's fees awarded to class counsel should be based on the entire common fund, not just the portion of the fund claimed by class members because "[class members'] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."[39] Each class member in this case had a vested interest in the class recovery, each could collect their share of the common fund upon request, and each benefits from the injunctive relief obtained regardless of whether the claimed their share of the common fund. Thus, every class member received a benefit within the meaning of the common-fund doctrine regardless of whether they claimed their share of the common fund,[40] and the fee award should be based on the full value of the common

---

[38] 444 U.S. 472 (1980).

[39] *Id.* at 481.

[40] *Id.* at 481–82 (holding the members of the class are at least the equitable owners of their
(continued...)

fund and the total benefit to the Class, not the cash payments made at the end of the claiming process.

We are well aware of the perception among some nonlawyers—and even among some lawyers and judges—that class-action plaintiffs' lawyers are overcompensated for the work that they do. But that perception is often the result of misinformation.[41] As a task force empaneled by the Third Circuit Court of Appeals found, "[w]hen there is a public reaction to an attorney fee award in a given case, the public is usually unaware of what the lawyers actually did, what risks they took, what investment they made, and how important their lawyering was to victory for the class."[42]

Even with the relatively quick settlement, this case consumed substantial time, attention, resources, and energy from Class Counsel. Without the prosecution of this case, the Class would likely have gone uncompensated. Class Counsel chose to accept the risks of prosecuting this case and to forego other more certain litigation and work.

Absent the availability of the class-action device and attorneys willing to accept the risks associated with such litigation, many persons would go without representation, and many wrongs would go without recourse, resulting in large financial windfalls to wrongdoers. It is not practical for attorneys to represent individuals in lawsuits against defendants under the TCPA for the relatively small amount of money at stake on an

---

[40](...continued)
respective shares in the recovery whether or not they assert their rights to claim their shares).

[41] *Third Circuit Task Force Report*, 208 F.R.D. 340, 344 (2002).

[42] *Id.*

individual basis. But if class actions can be pursued, and if attorneys who represent the class professionally, zealously, and successfully can be adequately and well-compensated, such claims can be pursued and wrongs can be righted.

## Conclusion

This Court has observed first hand the complexity of the case, the quality of the representation, and the results achieved. Class Counsel seek attorneys' fees that are eminently reasonable in light of the relevant factors. Class Counsel urge that the Application be granted, and that Class Counsel be awarded $162,500 as reasonable attorneys' fees plus $3,809.84 as reimbursement for the reasonable, actual out-of-pocket expenses Class Counsel incurred in prosecuting this case.

Respectfully submitted, this 2nd day of February 2016.

/s/ J. Clarke Newton
J. Clarke Newton, Esq. (ID No. 11598)
John S. Nichols, Esq. (ID No. 02535)
BLUESTEIN, NICHOLS, THOMPSON &
DELGADO, LLC
1614 Taylor Street
Columbia, South Carolina 29201
(803) 779-7599
(803) 771-8097 (fax)
cnewton@bntdlaw.com
jsnichols@bntdlaw.com

/s/ Marc B. Hershovitz
Marc B. Hershovitz (GA Bar No. 349510)
(Admitted *Pro Hac Vice*)
Marc B. Hershovitz, P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, GA 30326
(404) 262-1425
(404) 262-1474 (fax)
marc@hershovitz.com

Attorneys for Plaintiff

**Certificate of Service**

     I hereby certify that on February 2, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Krishna Narine, Esq.
Michael A. Timbes, Esq.
Thomas J. Rode, Esq.
John S. Nichols, Esq.
J. Clarke Newton, Esq.
Marc B. Hershovitz, Esq.

/s/ J. Clarke Newton
J. Clarke Newton, Esq. (ID No. 11598)
John S. Nichols, Esq. (ID No. 02535)
BLUESTEIN, NICHOLS, THOMPSON & DELGADO, LLC
1614 Taylor Street
Columbia, South Carolina 29201
(803) 779-7599
(803) 771-8097 (fax)
cnewton@bntdlaw.com
jsnichols@bntdlaw.com